IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 23-10 |
| ) | |
| GRANT WILLIAMS ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, and Brendan J. McKenna, Assistant United States Attorney for said District, and hereby submits this sentencing memorandum to the Court.

On February 28, 2023, defendant Grant Williams entered a plea of guilty to Counts One through Five of the Information at Criminal No. 23-10, admitting to failure to make entry in a record by a federal firearms dealer, in violation of 18 U.S.C. § 922(m). Pursuant to Rule 11(c)(1)(C), the parties stipulated that the appropriate sentence in this case is, as to each count, a term of imprisonment, if any, in an amount to be determined by the Court, a fine of $80,000.00, and a special assessment of $25.00.

In this case, the Sentencing Guideline provide for a range of imprisonment of 12-18 months. Given the nature of the offenses, the seriousness of the crimes, and the need to deter other federal firearm licensees from prioritizing profits over their statutory recording obligations, the government submits that a term of imprisonment is appropriate. The following factors support the proposed sentence.

**I.     UNITED STATES SENTENCING GUIDELINES**

The United States Supreme Court has instructed that "district courts must begin their [sentencing] analysis with the Guidelines and remain cognizant of them throughout the sentencing

process." *Peugh v. United States*, 569 U.S. 530, 541 (2013) (quoting *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007)).  Sentencing decisions are to be "anchored by the Guidelines," and appellate courts may presume that guideline sentences are reasonable.  *Peugh*, 569 U.S. at 541. When considering a non-Guidelines sentence, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (citing *Gall*, 552 U.S. at 50)).  "For even though the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions."  *Gall*, 552 U.S. at 46 (citing *Rita v. United States*, 551 U.S. 338, 349 (2007)).

## II.     TITLE 18, UNITED STATES CODE, SECTION 3553

The factors cited under Title 18, United States Code, Section 3553 support the recommended sentence in this case.

**(1)     18 U.S.C. § 3553(a)(1) – the nature and circumstances of the offense and the history and characteristics of the defendant**

### The Nature and Circumstances of the Offense

During the charged offenses, the defendant held a federal firearm license and sold firearms from his gun store in Butler, Pennsylvania.  As a federal firearm licensee, the defendant was required to maintain acquisition and disposition books related to the firearms he obtained and sold. When selling firearms, the defendant was required to record the firearm's description and the transferee's name, place of residence, and date of birth.  The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) rely upon those records in order to trace firearms used in crime.

During the COVID-19 pandemic, the defendant's firearm sales grew to about 50,000 per year.  Many of those firearm sales used GunBroker.com, an online auction site, but the defendant was still required to record the firearm's disposition.  In response to two unresolved traces of

firearms sold by the defendant, the ATF conducted an audit of the defendant's records. The audit revealed that 2,636 firearm acquisitions were neither in the defendant's possession nor recorded in his disposition records.

According to the defendant, he and his staff were overwhelmed with the volume of internet sales. During the pandemic, the defendant's business was one of the top five sellers on GunBroker.com. In each of the five-counts, the defendant pled guilty to failing to record the disposition of a firearm he sold that was later used in a crime. Like the other 2,361 firearms sold by the defendant, his failure to record the disposition of the firearms renders the firearms untraceable. The defendant's crimes are the result of his desire to prioritize the sale of firearms over his statutory recording obligations.

Nevertheless, the defendant argues in the Defendant's Sentencing Memorandum that he retained emails from the online auction site regarding the firearm transactions with the intent of recording the disposition of firearms later. ECF Doc. No. 25 at 4-5. The defendant acknowledges that doing so would be untimely[1] and that recording the required information was complicated by employee absences during the COVID-19 pandemic and the partial sale of his gun store to a third-party. *Id.*

Indeed, in an effort to mitigate his crimes, the defendant greatly casts blame on the third-party. According to the defendant, the third-party implemented a 90-day retention of sale documents policy, which led to the destruction of sale emails that the defendant purportedly intended to rely upon when it was convenient for him to satisfy his statutory recording obligations. *See id.* at 5-6. Additionally, the defendant argues that he "grudgingly" permitted the third-party to use the defendant's federal firearm license to conduct firearm transactions even though the third-

---

[1] "The sale or other disposition of a firearm shall be recorded by the licensed dealer not later than seven days following the date of such transaction." 27 CFR § 478.125e.

party possessed his own license.  *Id.* at 5.  The defendant would have this Court believe he was a victim of poor circumstance and committed mere technical violations of the law.  The defendant's position is undermined by the fact that his failure to properly record disposition of firearms predated the sale to the third-party (*see id*. at 4 n.2) and that the sale of his firearm business contributed to his $12 million net worth (ECF Doc. No. 19, Presentence Investigation Report "PIR" at ¶¶ 48-49).

As a federal firearm licensee, the defendant was required by statute to record the disposition of firearms he sold.  His decision to prioritize the sale of firearms over his recording obligations is inexcusable.  His decision resulted in the sale of thousands of untraceable firearms.  His decision merits a term of imprisonment.

**The History and Characteristics of the Defendant**

The defendant is 61-years old, and the instant crimes are his first convictions.  PIR at ¶¶ 29-30.  He is engaged and has no children.  PIR at ¶ 41.  The defendant characterized his physical health as generally healthy, but he described an eye condition and a prior episode of cardiac arrythmia.  PIR at ¶ 44.  He denied mental and emotional health concerns, as well as the use of controlled substances.  PIR at ¶¶ 45-46.  The defendant graduated from high school and reported completing approximately 70 credits at a community college.  PIR at ¶ 47.  Upon graduating from high school, the defendant managed a sports store owned by his father, and the defendant purchased that store and obtained his father's federal firearm license 10-years later.  PIR at ¶ 48.  In 1990, the defendant subsequently purchased his father's larger store, which he sold to the previously referenced third-party in 2021.  *Id.*

The defendant has a net worth of over $12 million.  PIR at ¶ 49.  The defendant's crimes were seemingly motivated by increased sales of firearms, and the sale of his business, a top five seller on GunBroker.com, resulted in further financial gain.  Accordingly, the government

submits that the stipulated total fine of $400,000 is appropriate.

 **(2) 18 U.S.C. § 3553(a)(2)(A) – the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense**

The defendant's crimes resulted in the sale of thousands of untraceable firearms. As already identified, the defendant prioritized the sale of firearms over his legal obligation to record the disposition of firearms. Therefore, a term of imprisonment is necessary both to reflect the seriousness of the offense and to promote respect for the law.

 **18 U.S.C. § 3553(a)(2)(B) – the need for the sentence imposed to afford adequate deterrence to criminal conduct**

Law enforcement nationwide rely upon firearm traces to identify, investigate, and prosecute individuals who use guns in their criminal activity. When federal firearm licensees fail to satisfy their statutory recording keeping obligations, law enforcement's endeavors are undermined. A term of imprisonment, not probation, would adequately deter other federal firearm licensees from prioritizing sales over their record keeping obligations.

 **18 U.S.C. § 3553(a)(2)(C) – the need for the sentence imposed to protect the public from further crimes of the defendant**

As the defendant both surrendered and agreed to never hold a federal firearm license in the future, the government concedes that a term of imprisonment is not necessary to protect the public from further crimes of the defendant.

 **(3) 18 U.S.C. § 3553(a)(3) – the kinds of sentences available**

 and

 **(4) 18 U.S.C. § 3553(a)(4)(A) – the kinds of sentence and the sentencing range established by the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines**

The government submits that the Presentence Investigation Report accurately reflects the sentencing options available to the Court under the applicable statutes and Sentencing Guidelines. PIR at ¶¶ 52-65.

**(5)   18 U.S.C. § 3553(a)(5) – any pertinent policy statement**

The government is not aware of any pertinent policy statements that are applicable.

**(6)   18 U.S.C. § 3553(a)(6) – the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

A term of imprisonment within the range established by the Sentencing Guidelines will avoid unwarranted sentence disparities among similarly situated defendants.

**(7)   18 U.S.C. § 3553(a)(7) – the need to provide restitution to any victims of the offense**

Restitution is not applicable in this case.

### III.   CONCLUSION

WHEREFORE, for all the foregoing reasons, the government respectfully requests that the Court impose the agreed upon sentence, in addition to a term of imprisonment.

Respectfully submitted,

TROY RIVETTI
Acting United States Attorney

By:   s/*Brendan J. McKenna*
BRENDAN J. MCKENNA
Assistant U.S. Attorney
PA ID No. 314315